IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | NO. 3:96-cr-00145 |
| v. | ) | 2:95-cr-00010 |
| | ) | |
| | ) | JUDGE RICHARDSON |
| RONALD DICK | ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 11, "Motion").[1] Via the Motion, Defendant seeks a reduction of his 55-year sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Defendant claims "extraordinary and compelling" reasons exist for his release because: (1) his wife's health is failing, and he desires to care for his thirteen-year-old granddaughter; and (2) his age (67) and health conditions (COPD and obesity) combined with the COVID-19 pandemic. The Government has filed a response in opposition (Doc. No. 16, "Response"), arguing that the Motion should be denied because Defendant has not established "extraordinary and compelling reasons for his release" and consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

## BACKGROUND

On June 21, 1995, in case no. 2:95-cr-00010, Defendant was charged in an indictment with one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One); one count of carrying a firearm during a drug trafficking crime, in violation

---

[1] The Court cites to the docket numbers in case no. 2:95-cr-10, but notes that identical filings of Defendant's Motion for Compassionate Release and the Government's response thereto are filed in case no. 3:96-cr-145 at docket numbers 210 and 215, respectively.

of 18 U.S.C. § 924(c) (Count Two); and one count of possession of a stolen motor vehicle, in violation of 18 U.S.C. § 2313 (Count Three). (No. 2:95-cr-00010, Doc. No. 1, PSR1 at 1).[2] On October 26, 1995, Defendant pled guilty to all counts of the indictment. (No. 2:95-cr-00010, Doc. No. 5). On January 18, 1996, Defendant received a sentence of 295 months of imprisonment followed by five years of supervised release. (No. 2:95-cr-00010, Doc. No. 9).

On November 21, 1996, in case no. 3:96-cr-00145, Defendant was charged in an indictment with one count of conspiracy to commit murder, in violation of 18 U.S.C. § 1117 (Count One); one count of solicitation of a crime of violence, in violation of 18 U.S.C. § 373 (Count Two); one count of attempted murder, in violation of 18 U.S.C. § 1114 (Count Three); one count of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Four); and one count of causing another to travel in interstate commerce with the intent to commit murder for hire, in violation of 18 U.S.C. § 1958 (Count Five). (No. 3:96-cr-00145, Doc. No. 19, PSR2 at 1). The charges were based upon a murder-for-hire plot that Defendant planned while incarcerated, whereby he planned the murder of a Federal Bureau of Investigations agent. (PSR2 at 5-7). On May 14, 1997, after a twelve-day jury trial, the jury found Defendant guilty on all counts. (No. 3:96-cr-00145, Doc. No. 149). On August 25, 1997, Defendant received a sentence of 420 months of imprisonment followed by five years of supervised release. (No. 3:96-cr-00145, Doc. No. 180). The sentence was to run consecutively to Defendant's state sentence, and consecutively to the sentence imposed in case no. 2:95-cr-00010. (*Id.*).

Defendant has been serving his sentence at Florence USP. According to BOP, Defendant's release date is December 23, 2050. *See Federal Inmate Locator*, Bureau of Prisons,

---

[2] The PSR for case no. 2:95-cr-00010 will be referenced as "PSR1" and the PSR for case. no. 3:96-cr-145 will be referenced as "PSR2."

https://www.bop.gov/inmateloc/ (last accessed Dec. 7, 2021).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. §

---

[3] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id.*

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id.* The court noted that this is a question that has "sharply divided the courts," *id.* (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[4] Therefore, "[u]ntil the Sentencing

---

[4] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution

Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[5] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

[5] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> > > i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> > > ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> > A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> > B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ANALYSIS

### A. Extraordinary and Compelling Reasons

Defendant bases his request for compassionate release on the following reasons that he contends are extraordinary and compelling:

> [Defendant's] wife of 48 years health is failing due to diabetic medical problems and the need to care for his 13 year old orphaned granddaughter who is now his and his wife's responsibility to care for after his daughter'[s] suicide and [Defendant's] age and own health conditions[.] . . . Over the last year medical found a small spot on [Defendant's] lungs and during that time he has developed breathing problems along with a cough. Medical has told [Defendant] that he has COPD . . . . [Defendant] is also clinically obese.

(Doc. No. 11 at 1-5). Defendant asserts that although his health conditions have improved, "the nation remains in the midst of the COVID-19 pandemic" and his underlying health conditions place him "at increased risk of serious illness from the virus." (*Id*. at 5).

In its Response, the Government argues that Defendant has not proffered any extraordinary and compelling reasons to grant release pursuant to 18 U.S.C. § 3582(c)(1)(A), because (1)

Defendant's "desire to care for his wife and granddaughter are not 'extraordinary and compelling' reasons that justify his release; and (2) none of Defendant's health conditions rise to the level of extraordinary and compelling reasons because he has been fully vaccinated against COVID-19." (Doc. No. 16 at 12).

To grant the Motion, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to persuade the Court to make such a determination. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling."). As noted above, the Court has "*full discretion* to define 'extraordinary and compelling'" in the sense that it is not bound by the reasons listed in policy statement § 1B1.13. *Jones*, 980 F.3d at 1111 (emphasis added).

The Court agrees with the Government that Defendant has not demonstrated that his wife's health issues, and his desire to care for his granddaughter, is an extraordinary and compelling reason to grant compassionate release. First, Defendant has not attached any documentation or otherwise provided evidence to support the assertion that his wife is suffering from diabetes, or that her diabetes renders her incapacitated and unable to care or provide for their granddaughter. *See United States v. Carr*, No. 5:19-CR-00511, 2021 WL 2227401, at *2 (N.D. Ohio June 2, 2021) (finding that the defendant's assertion that his wife's failing health prevented her from caring for their daughter did not warrant compassionate release, because the defendant's evidence was "insufficient to show that his wife is incapacitated"); *United States v. Richardson*, No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020) (finding extraordinary or compelling reasons were not established where "defendant allege[d] his mother c[ould] no longer care for his daughter

due to her medical issues, [but] there [wa]s no evidence submitted directly from defendant's mother or other records supporting these assertions"). As noted, it is Defendant's burden to demonstrate through an evidentiary showing that extraordinary and compelling reasons for his release exist. *See Crouch*, 2020 WL 1963781, at *3.

Second, as the Government aptly points out (Doc. No. 16 at 13-14), even if Defendant had demonstrated that his wife could no longer care for their granddaughter, he has failed to establish that he is the only other available caregiver. "[T]he death [or incapacitation] of a minor child's caregiver only amounts to an 'extraordinary and compelling reason' when the defendant has provided documentation that they are the only available caregiver for the child." *United State v. Lemon*, No. 4:16-cr-0239, 2021 WL 1060142, at *2 (N.D. Ohio Mar. 18, 2021); *see also United States v. Cruz-Rivera*, No. 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020) (holding that the defendant did not carry his burden to show that his wife is incapacitated due to her breast cancer or diabetes, or that he would be the only available caregiver to their minor child if his wife were incapacitated). Finally, as the Government also highlights (Doc. No. 16 at 15), Defendant has not established that he would be a suitable caregiver for his granddaughter, who was born after Defendant became incarcerated. And given Defendant's violent history (which includes a planned scheme (fortunately gone awry) to murder an FBI Agent (PSR2 at 5-7), aggravated kidnapping where the victim was brutally beaten (PSR1 at 4-7), and the murder of another inmate in prison (Doc. No. 16-2)), the Court surmises that Defendant would have a hard time doing so. *See United States v. Johnson*, No. 1:15-cr-00059, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020) (declining to find an extraordinary and compelling reason for compassionate release where the defendant "failed to establish that he is likely to be found a 'suitable caretaker' for his child by the governing authorities.").

The Court is sympathetic to families in need, as Defendant's family allegedly is. However, in the absence of an evidentiary showing that (1) his wife is in fact incapacitated, (2) there are no other alternative caregivers, and (3) that Defendant himself is a suitable caregiver, the Court in its discretion declines to find that Defendant's wife's alleged health issues and the corresponding alleged need of his granddaughter for care present an extraordinary and compelling reason to grant compassionate release.[6]

Further, the Court finds that none of Defendant's health conditions rise to the level of extraordinary and compelling reasons, because he has been fully vaccinated against COVID-19. The Sixth Circuit recently held that a defendant's access to the COVID-19 vaccine while incarcerated forecloses a finding of extraordinary and compelling reasons based on a defendant's underlying health conditions, unless the defendant can advance a "compelling reason" justifying the defendant's failure to be vaccinated. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). The court explained:

> We need not debate the medical implications of Lemons's [health] condition. For even recognizing the purported seriousness of his condition, the fact remains that, as Lemons acknowledges, the COVID-19 vaccine is available to him in prison. . . .
>
> Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19.

---

[6] The Court declines to say definitely whether it would have found the existence of "extraordinary and compelling reasons" had Defendant actually made this showing.

*Id.*; *see also United States v. Traylor*, ---F.4th---, 2021 WL 5045703, at *1 (6th Cir. Nov. 1, 2021) (reaffirming *Lemons* and finding that although the defendant's medical conditions were serious, he had access to the COVID-19 vaccine, and therefore his incarceration during the COVID-19 pandemic did not present an extraordinary and compelling reason for a sentence reduction). The Sixth Circuit further explained that if "an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification." *Id.*; *see also United States v. Sweet*, No. 21-1477, 2021 WL 5371402, at *3 (6th Cir. Nov. 18, 2021) (citing *Lemons* and finding that the district court abused its discretion when the district court granted compassionate release to an inmate who had been fully vaccinated). Thus, given the wide availability of the COVID-19 vaccine, *Lemons* forecloses a substantial portion of inmates' arguments that their underlying health conditions combined with the COVID-19 pandemic constitute extraordinary and compelling reasons for release.

As noted, however, L*emons* does leave open the avenue of asserting a compelling reason for not taking the vaccine despite its availability to the defendant. But this avenue is not available here. The Government has filed Defendant's BOP vaccination record, which reveals that Defendant has been fully vaccinated[7] against COVID-19, meaning that he is protected to the fullest extent by the vaccine. (Doc. No. 15-5). Defendant received the first dose of the Moderna vaccine on January 22, 2021, and the second dose on February 22, 2021. (*Id.*). Because Defendant has been

---

[7] Although "booster" vaccines are now available, the CDC continues to consider someone "fully vaccinated" two weeks after their second dose in a two-dose series (such as the Pfizer or Moderna vaccines), or two weeks after a single-dose vaccine (such as Johnson & Johnson's Janssen vaccine). *See When You've Been Fully Vaccinated*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last accessed Dec. 8. 2021).

vaccinated, his health conditions coupled with the COVID-19 pandemic do not amount to an "extraordinary and compelling reason" warranting a sentence reduction. *Lemons*, 15 F.4th at 751.

Accordingly, the Court finds that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release. Thus, his Motion is denied on this basis, and the Court need not proceed to the remaining steps of the compassionate release analysis (*i.e.*, an analysis of the Section 3553(a) factors).

B. Section 3553(a) Factors

As just suggested, because Defendant fails to qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will not address the Government's (certainly colorable) suggestion that they militate against compassionate release for Defendant.

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release.

For these reasons, the Motion (No. 2:95-cr-10, Doc. No. 11, and No. 3:96-cr-145, Doc. No. 210) will be **DENIED**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE